**WORTHINGTON v. DAVIS, Director General of Railroads.    (6 Div. 685.)**

(Supreme Court of Alabama.    Nov. 16, 1922. Rehearing Denied Dec. 14, 1922.)

1. **Pleading ⬦64(2)—Count charging several breaches of contract held duplicitous and subject to demurrer.**

Counts in a complaint in an action against a railroad for hindering plaintiff in the construction of a sidewalk, which averred that it was the duty of the defendant railroad under the contract not to hinder, delay, embarrass, or interfere with plaintiff in the performance of his duties, and that the defendant in breach of the contract continuously hindered, delayed, embarrassed, and interfered with plaintiff in the work, and then alleged in each count more than one different breaches of this stipulation or covenant of the contract, were duplicitous and demurrable, in view of Code 1907, § 5382, forms Nos. 8 and 9, and section 5321.

2. **Pleading ⬦8(3)—Allegation that defendant hindered plaintiff in work held conclusion.**

An allegation that the Director General of Railroads in breach of a contract "continuously hindered, delayed, embarrassed, and interfered with the plaintiff in certain work," stated no fact, but just a conclusion of the pleader.

3. **Pleading ⬦8(3)—Allegation that defendant prevented plaintiff from finishing work held not to state fact.**

A complaint, alleging that defendant in breach of contract prevented plaintiff "from going on and finishing the same in a reasonable and proper manner," stated no fact on which a material issue could be taken.

4. **Pleading ⬦18—Allegation held indefinite and too general.**

An allegation that defendant forced plaintiff "to keep his working forces, teams, and machinery working at low efficiency through disorganization for long periods of time," in the absence of fact showing how defendant

forced him, was too indefinite, uncertain, and general.

**5. Pleading ⟨key⟩18—Allegation held not definitely to state matter upon which issue could be taken.**

An allegation that defendant "forced the plaintiff to take out a large portion of the excavated material by manual labor and the use of wheelbarrows instead of removing it by the use of a steam derrick and teams," in the absence of fact showing how defendant forced him to do the work, or that the removing of the material by derrick and teams would not have interfered with movement of trains by defendant, was insufficient upon which to take issue, where plaintiff contracted that "at no time will he be permitted to interfere with the movement of trains."

**6. Pleading ⟨key⟩8(3)—Allegations, stating effect of certain acts of defendant, held conclusions.**

A complaint, alleging that defendant railroad forced plaintiff contractor constructing a sidewalk "to handle and rehandle several times a large portion of the excavated material before removing the same," and "required him to move and place heavy timbers and other construction materials by manual labor in close quarters, instead of moving and placing them by the use of a steam derrick in the open," and "made unreasonable requirements for extra work in connection with the building of the viaduct or incident thereto," and "to tear out or remove timbers which he had placed under the supervision of one R., the duly authorized representative of" the defendant's chief engineer of construction, etc., *held* demurrable as conclusions, or as not stating facts showing why they were true.

**7. Pleading ⟨key⟩8(3)—Allegations that defendant tore out portions of structures made by plaintiff's contractor held to state conclusions and not facts upon which defendant could take issue.**

Complaint, alleging that defendant railroad successively damaged or tore out portions of the plaintiff contractor's set timbers or forms by wrongfully causing or allowing trains, locomotives, or cars to strike them, stated conclusions and no facts upon which defendant could take material issue, where the complaint showed that plaintiff contracted to maintain a "vertical clearance above the top of rail of the railroad of at least 20 feet, and a lateral clearance of at least 6 feet between outside of forms and center line of tracks at all times," and plaintiff failed to aver that its timbers or forms conformed to such clearance requirements when struck by trains.

**8. Damages ⟨key⟩146—Allegation held defective as permitting proof of more than one damage.**

An allegation that defendant "successively damaged or tore out portions of the plaintiff's set timbers or forms," was defective in that under it proof of more than one damage or of more than one act of tearing out portions could be made at different times and under different circumstances.

**9. Contracts ⟨key⟩337(2)—Count held not to state facts upon which material issue could be taken.**

An allegation that defendant railroad "required portions of the viaduct which had been completed or partially completed in strict accordance with the contract to be torn out, and rebuilt in a changed form or manner," in the absence of other facts, was insufficient in failing to state facts on which a material issue could be taken by the defendant.

**10. Pleading ⟨key⟩8(7)—Setting forth in complaint of facts constituting breach of contract necessary.**

In action for breach of contract, the necessary facts constituting the breach should be set forth in the complaint in clear, unmistakable terms, and the breach should be assigned with such clearness, certainty, and particularity as will notify the defendant in what particular he has failed to perform the covenant or stipulation in the contract, and a mere statement, conclusion, of the pleader that the covenant or stipulation has been broken is not sufficient.

**11. Pleading ⟨key⟩192(1)—Contradictory averments in one count subject count to demurrer.**

Inconsistent, variant, and contradictory averments in the statement of a cause of action in one count subject the count to demurrer.

**12. Contracts ⟨key⟩198(3)—Railroad held to have right to make alterations in viaduct in course of construction.**

A contract for the construction of a viaduct over railroad tracks, reserving the right to the railroad to make any alterations or additions at any time, *held* to give the railroad the right to make alterations in or additions to the work, or plans or specifications therefor, at any time during the progress of erecting the viaduct and before it was completed.

**13. Evidence ⟨key⟩441(1)—Prior verbal stipulation merged into written contract.**

A verbal stipulation or covenant made previous to a written contract, was merged into it, and an oral stipulation is inadmissible to add to, contradict, or alter the written contract.

Appeal from Circuit Court, Jefferson County; Romaine Boyd, Judge.

Action by Thomas Worthington against James C. Davis, as Director General of Railroads. After adverse ruling on the pleading, plaintiff takes a nonsuit and appeals. Affirmed.

Brenton K. Fisk, of Birmingham, for appellant.

Although a delay or suspension of the work is made necessary by the conduct of the railroad company, the contractor is not obliged to abandon the contract, but may substantially complete the work and recover in addition to the contract price, the damages caused by the interruption. The

---

⟨key⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

counts state a cause of action. 9 Cyc. 914; 119 U. S. 312, 7 Sup. Ct. 219, 30 L. Ed. 416; 13 How. (54 U. S.) 307, 14 L. Ed. 157; 57 N. E. 1108; 56 App. Div. 195, 67 N. Y. Supp. 670; 102 N. Y. 205, 6 N. E. 386; 75 Ill. 645; 110 Ill. App. 210; 174 Ind. 1, 87 N. E. 215, 30 L. R. A. (N. S.) 85; 174 Ind. 1, 90 N. E. 68, 30 L. R. A. (N. S.) 85; 174 Ind. 1, 91 N. E. 503, 30 L. R. A. (N. S.) 85; 105 Ind. 137, 5 N. E. 28; 102 Miss. 343, 59 South. 97; 35 Md. 315; 101 Me. 140, 63 Atl. 651; 84 Tex. 232, 19 S. W. 168; 241 Fed. 545, 154 C. C. A. 321; 2 Williston on Cont. § 704. In the present case all the breaches were properly pleaded in one count: Chitty on Pl. (16th Am. Ed.) 439; 13 App. Div. 412, 43 N. Y. Supp. 8. A written contract may be supplemented by parol contemporaneous terms or provisions which do not vary the force and effect of the writing. 114 Iowa, 313, 86 N. W. 301; 72 Iowa, 31, 33 N. W. 349; 88 Iowa, 109, 55 N. W. 200, 45 Am. St. Rep. 230; 110 Iowa, 588, 81 N. W. 799; 2 Williston on Cont. § 642; 89 Ala. 505, 7 South. 444; 148 Ala. 666; 156 Mass. 108, 30 N. E. 474, 17 L. R. A. 270, 32 Am. St. Rep. 441. A construction which makes the contract fair and reasonable will always be preferred to one which leads to harsh and unreasonable results. 192 Ala. 42, 68 South. 317, Ann. Cas. 1917D, 863; 2 Elliott on Cont. § 1521; 2 Williston on Cont. § 620.

Stokely, Scrivner & Dominick, of Birmingham, for appellee.

Except in actions of assumpsit, two or more breaches of the same covenant or stipulation in the contract cannot be set out in one and the same count. 22 Ala. 383; 9 Cyc. 730; 13 C. J. 733; 111 Ala. 554, 20 South. 400; 180 Ala. 556, 61 South. 59; 14 Ala. App. 422, 70 South. 201. Oral evidence is inadmissible to add to, alter, or contradict a written contract. 89 Ala. 505, 7 South. 444; 151 Ala. 643, 44 South. 557; 10 R. C. L. 1018, 1030; 22 C. J. 1248; 17 Cyc. 716; 80 Ala. 51; 96 Ala. 454, 11 South. 410; 90 Ala. 486, 7 South. 912; 70 Ala. 417; 171 Ala. 332, 55 South. 109.

MILLER, J. Thomas Worthington brings this suit against James C. Davis, Director General of Railroads, as agent, under section 206 of the Transportation Act of 1920 (41 Stat. 461), operating the systems of the Louisville & Nashville Railroad Company, Southern Railway Company, Alabama Great Southern Railroad Company, and Seaboard Air Line Railway Company.

The plaintiff sought damages for the violation or breach of a duty alleged to have grown out of a contract for the erection of the Twenty-First Street viaduct or bridge in the city of Birmingham, across the tracks of these railroads, which was made and entered into by him with the Southern Railway Company, which was not terminated by the defendant with plaintiff; but under it the defendant continued the work and assumed the benefits and obligations of the contract.

There are nine counts in the complaint, demurrers were sustained to each by the court, the plaintiff then took a nonsuit, there was judgment thereon by the court, and from this judgment plaintiff appeals, and the correctness of the rulings of the trial court on demurrers to these nine counts is before this court for its consideration by the errors assigned.

In counts 1, 2, 3, 4, and 5 plaintiff avers it was the duty of the defendants under the contract not to hinder, delay, embarrass, or interfere with him in the performance of his contractual duties in building this viaduct; and the defendant in breach of the contract continually hindered, delayed, embarrassed, and interfered with plaintiff in the work; and then each count alleges more than one and some as many as 10 or 11 different breaches of this stipulation or covenant of the contract. Each of these counts also avers that defendant "in many other ways hindered, delayed, embarrassed and interfered with plaintiff in and about the work," that time was expressly made of the essence of the contract; the bridge was to be constructed within nine months, and plaintiff was set back by these delays one year in finishing the work, and as a proximate result made it necessary for plaintiff to build a large portion of the structure when the wages and necessary materials were higher than they were during the time in which the viaduct would have been completed, except for the delays mentioned.

These counts were framed similarly to the averments in the complaint in the case of Del Genovese v. Railroad Co., 13 App. Div. 412, 43 N. Y. Supp. 8, affirmed in 162 N. Y. 614, 57 N. E. 1108. The sufficiency of the complaint there does not appear to have been questioned and assailed by the same grounds of demurrer as in this case; the same question here does not appear from the record to have been raised there. However that may be, this court in Nave v. Berry, 22 Ala. 382, held:

"The rule in pleading, as we understand it, is, that where a contract contains several stipulations, the pleader may in each count assign as many breaches as he pleases; but each breach must be upon a distinct stipulation in the contract. On the other hand, he cannot assign two breaches in the same count, of one and the same stipulation, because that would be objectionable for duplicity. 1 Chit. Pl. 336."

In the same case this court held:

"If two breaches are assigned on the same stipulation, then a demurrer to the whole count would reach it."

This court again in Friddle v. Braun, 180 Ala. 562, 61 South. 61, declared this same

rule on a count for damages for breach of a contract:

"In count 6, the plaintiff joined separate and independent actions, and this is forbidden, notwithstanding he might have set out each of them in the same complaint by separate and distinct counts. The trial court did not err in sustaining the defendant's demurrer to this count."

In Sibley v. Barclay, 14 Ala. App. 422, 70 South. 201, the rule in Nave v. Berry, 22 Ala. 382, was approved in this language:

"We are not unmindful of the rule that allows the plaintiff in an action of assumpsit to assign several breaches of the contract in the same count. Sloss Iron & Steel Co. v. Macon County, 111 Ala. 555, 20 South. 400. But, to avoid duplicity in pleading, this rule is subject, to the limitation that two or more breaches of the same covenant or stipulation must not be stated in a single count. Nave v. Berry, 22 Ala. 382; 9 Cyc. 730; Birmingham Railway, L. & P. Co. v. Nicholas, 181 Ala. 491, 61 South. 361."

[1] Counts 1, 2, 3, 4, and 5, each set up more than one separate and independent breach of the same stipulation or covenant in this contract. More than one cause of action based on the same implied covenant or stipulation in the contract, not to delay him in its performance, is averred in each of these counts. This renders each count defective for duplicity in pleading, and subject to the demurrer of the defendant. Each of these counts charges a violation of the implied covenant or stipulation not to hinder, delay, embarrass or interfere with plaintiff in his contractual duties in building the viaduct; and count 1 then avers:

"But the said Director General, in breach of said contract, continually hindered, delayed, embarrassed, and interfered with the plaintiff in said work; prevented him from going on and finishing the same in a reasonable and proper manner; forced him to keep his working forces, teams, and machinery working at low efficiency through disorganization for long periods of time; forced the plaintiff to take out a large portion of the excavated material by manual labor and the use of wheelbarrows instead of removing it by the use of a steam derrick and teams; forced him to handle and rehandle several times a large portion of the excavated material before removing the same; required him to move and place heavy timbers and other construction materials by manual labor in close quarters, instead of moving and placing them by the use of a steam derrick in the open; made unreasonable requirements for extra work in connection with the building of the viaduct or incidental thereto; required the plaintiff to tear out or remove timbers which he had placed under the supervision of one R. C. Bryant, the duly authorized representative of the Director General's Chief Engineer of Construction acting in the line and scope of his duties as such representative in accordance with the contract and to use in lieu thereof special construction materials which could be obtained only with delay to the plaintiff in the building of the viaduct; successively damaged or tore out portions of the plaintiff's set timbers or forms by wrongfully causing or allowing trains, locomotives, or cars, to strike them; required portions of the viaduct which had been completed or partially completed in strict accordance with the contract to be torn out and rebuilt in a changed form or manner, and in many other ways, hindered, delayed, embarrassed, and interfered with the plaintiff in and about the said work."

This combines in one count numerous distinct breaches of the same stipulation against delay. Count 1 contains 11 separate, distinct breaches of the expressed or implied stipulation or covenant of duty alleged to be in the contract not to hinder, delay, embarrass, or interfere with plaintiff in his contractual duties in constructing the viaduct. Counts 2, 3, 4, and 5 contain at least 2 or more of these same breaches. If such numerous, distinct breaches of one expressed or implied duty in a contract are permissible in one count, then the court would be forced to permit the defendant, in answering it, to combine and incorporate in one plea at least 11 —one for each breach—separate and distinct defenses to the 11 separate, distinct, breaches in the one count. There should also, if necessary, be allowed 11 or more separate, distinct replications in one and 11 or more rejoinders in one. This would so mix and mingle the actions and the defenses to them that the court and jury would be confused and the issue obscured. They, the court and jury, under such pleading could not keep clearly informed of the matter or matters in issue. In L. & N. R. Co. v. Gray, 154 Ala. 200, 45 South. 299, this court wrote:

"It is not objectionable to rely on two or more grounds or usurpation in one information; but each ground should be stated in a separate count or paragraph, in order to attain that perspicuity and certainty which is required by the statute in such proceedings."

And the court then made with approval this quotation from the Dusenberry Case in 94 Ala. 413, 10 South. 274:

"Inextricable confusion of issues would result from the blending in one count of a number of distinct breaches of duty as independent grounds of recovery, to be chosen from and relied on at the election of the plaintiff."

The rule in Nave v. Berry, 22 Ala. 382, appears to be correct. It seems to meet the approval of forms Nos. 8 and 9 of section 5382 of the Code of 1907. Form 8 states: "Here set out the covenant or agreement and the breach complained of." It does not say set out the breaches complained of, but the breach complained of. If there were more than one breach of the same covenant, it should be set out in another count. Form 9 states: "The defendant has failed to comply with the following provisions thereof." It

does not indicate an approval of several breaches of one provision or covenant or stipulation in the contract; but indicates an approval of the rule in Nave v. Berry, supra. This is the modern rule. It simplifies and singles out the issue in one count, and does not mystify and multiply the breaches of one covenant in one count. It keeps the real, single, issue of one breach of one stipulation of one contract in one count before the court and jury. This is the spirit and effect of our decisions, and the aim and purpose of our statute (section 5321), and of forms 8 and 9 of section 5382.

The demurrers point out these defects in counts 1, 2, 3, 4, and 5, and the court did not err in sustaining them. Forms 8 and 9, § 5382; Nave v. Berry, 22 Ala. 382; Friddle v. Braun, 180 Ala. 562, 61 South. 59; 9 Cyc. 730; B. R. L. & P. Co. v. Nicholas, 181 Ala. 491, 61 South. 361; Sibley v. Barclay, 14 Ala. App. 422, 70 South. 201; 13 C. J. 733, § 868, headnotes 19 and 23.

These counts state as a conclusion it was the duty of the defendant under the contract not to hinder, delay, embarrass, or interfere with the plaintiff in the performance of his contractual duties in building the viaduct, The duty is averred in the alternative, and these counts then allege conjunctively several breaches of all four of these disjunctive duties. Then the counts do not set out the contract in full. The averment is as follows:

"A full, true, and correct copy of such portion of the said contract as was reduced to writing, including those certain specifications to which reference is therein made is hereto attached, marked 'Exhibit A,' and is hereby made a part of this count."

These counts fail to state whether the oral parts of the contract, if any, had any bearing on the duty claimed to have been breached. The contract is not averred in full with clearness and certainty.

"All pleadings must be as brief as is consistent with perspicuity, and the presentation of the facts, or matter to be put in issue, in an intelligent form; no objection can be allowed for defect of form, if facts are so presented that a material issue in law or fact can be taken by the adverse party thereon."

This rule of pleading is enjoined on the courts and parties by the statute in this state. Section 5321, Code 1907. In Birmingham R. L. & P. Co. v. Nicholas, 181 Ala. 500, 61 South. 364, this court said:

"It cannot be said of a complaint that it is perspicuous, or that it presents the facts in an intelligent form, so that a material issue may be taken thereon by the defendant, unless it contains a clear and distinct statement of the facts which constitute the cause of action, so that they may be understood by the party who is to answer them, by the jury, who are to ascertain the truth of the allegations, and by the court, who is to give judgment."

[2-9] Has this statute and this court's construction of it been observed by the plaintiff in his presentation of the case in counts 1, 2, 3, 4, and 5, as shown by the 11 separate and distinct breaches of the one express or implied duty in the covenant in the contract not to delay, etc., him in the performance of its contract? These breaches are not numbered, but we will number them from 1 to 11, both inclusive, in this opinion for convenience in referring to them. They all appear in count 1.

"The said Director General in breach of said contract [breach No. 1] continually hindered, delayed, embarrassed, and interfered with the plaintiff in said work."

This states no fact. It is just a conclusion of the pleader.

Breach No. 2:

"Prevented him from going on and finishing the same in a reasonable and proper manner."

This states no fact on which a material issue could be taken; it does not state in what way he was prevented; and under it plaintiff could prove numerous preventions by the defendant, without the complaint giving him the facts constituting them.

Breach No. 3:

"Forced him to keep his working forces, teams and machinery working at low efficiency through disorganization for long periods of time."

It states no facts showing how defendant forced him. It does not present facts showing the breach in such an intelligent way that a material issue of fact or law can be taken on it by the defendant. It is indefinite, uncertain, and too general in its statement of the breach.

Breach No. 4:

"Forced the plaintiff to take out a large portion of the excavated material by manual labor and the use of wheelbarrows, instead of removing it by the use of a steam derrick and teams."

This states no fact showing how defendant forced him to do this work. It fails to state the removing of the material by derrick and teams would not have interfered with the movement of trains, as to which these counts show plaintiff contracted in writing that "at no time will he [plaintiff] be permitted to interfere with the movement of trains." These counts aver in the contract that—

"The contractor will make his excavations and construct his forms in such manner as not to interfere with or endanger operation during construction."

And the plaintiff fails to aver the removing of the excavated material by use of steam derrick and teams would not have in-

terfered with or endangered operation during construction.

Breach No. 5:

"Forced him to handle and rehandle several times a large portion of the excavated material before removing the same."

It states no facts showing how he was forced to do it. It does not aver this was not necessary to prevent him from interfering with the movement of trains, as the count shows it was his duty to do in the performance of his work. It does not aver this was not necessary to prevent him from interfering with or endangering operation during construction, as the contract required, and as is shown by the counts.

Breach No. 6:

"Required him to move and place heavy timbers and other construction materials by manual labor in close quarters, instead of moving and placing them by the use of a steam derrick in the open."

This states no fact showing how the defendant required him to move and place heavy timbers, etc. It fails to state he could have moved and placed them by derricks in the open without interfering with the movement of the trains, and it fails to state he could have moved and placed them by derricks in the open without interfering with or endangering operation during construction, as he had contracted to do, as shown by the counts.

Breach No. 7:

"Made unreasonable requirements for extra work in connection with the building of the viaduct or incident thereto."

It fails to state what were the requirements and what was the extra work. It states conclusions and no facts on which a material issue can be taken by the defendant. It fails to aver the contract did not permit defendant to require this extra work to be done by the plaintiff.

Breach No. 8:

"Required the plaintiff to tear out or remove timbers which he had placed under the supervision of one R. C. Bryant, the duly authorized representative of the Director General's chief engineer of construction, acting in line and scope of his duties as such representative in accordance with the contract, and to use in lieu thereof special construction materials which could be obtained only with delay to the plaintiff in the building of the viaduct."

It states conclusions, it does not state facts to be put in issue in intelligent form, and it does not state facts on which a material issue can be taken by the defendant. It does not state the kind of materials that were removed, or with what kind they were replaced and where they were to be used. It does not state the materials removed did not interfere with the movement of the trains, as the plaintiff contracted he would

not do, as shown by each count. It does not state that the timbers torn out were constructed in such manner as not to interfere with or endanger operation during construction, as the plaintiff contracted he would not do, as shown by each count. It does not state the timbers removed were at least 20 feet high above the top of the rail of the railroad, and were located at least 6 feet between outside of forms and center line of tracks of the railroad, as the written contract required. It does not aver the defendant was not authorized under the contract to require plaintiff to remove these timbers and replace them with others.

Breach No. 9:

"Successively damaged or tore out portions of the plaintiff's set timbers or forms by wrongfully causing or allowing trains, locomotives or cars to strike them."

It fails to state where the timbers were placed; how far from the center of the tracks, and how high from the top of the rails. These counts show plaintiff contracted not to interfere with the movement of trains; and it fails to aver these timbers or forms were placed where they would not interfere with the movement of trains. These counts show plaintiff contracted to maintain a "vertical clearance above the top of rail of the railroad of at least 20 feet, and a lateral clearance of at least 6 feet, between outside of forms and center line of tracks at all times." It fails to aver these timbers or forms were located at least 6 feet from outside forms and center line of tracks when successively damaged or torn out by the trains, and it fails to aver they maintained a vertical clearance above the top of rail of the railroad tracks of at least 20 feet when struck by the trains. It states conclusions and no facts on which a material issue can be taken by the defendant. This breach alleges defendant "successively damaged or tore out portions of the plaintiff's set timbers or forms." Under it proof of more than one damage or of more than one act of tearing out portions of the set timbers or forms could be made at different times, and under different circumstances. This, if permitted, would allow proof of more than one breach of the same stipulation or duty with no facts averred to give defendant notice thereof.

Breach No. 10:

"Required portions of the viaduct which had been completed or partially completed in strict accordance with the contract to be torn out, and rebuilt in a changed form or manner."

It fails to state the facts. It fails to state what part of the viaduct had been completed or partially completed, and it fails to state in what form it was rebuilt. It gives no facts on which a material issue can be taken by the defendant. These counts show:

"The railway company shall have the right, and the same is hereby reserved by the railway company, to make such alterations in or additions to the work or plans or specifications therefor, at any time during the progress of said work, as, in the judgment of the said chief engineer of the railway company or his duly authorized representative may be necessary or expedient."

It affirmatively appears from these counts that the defendant had the right to make such alterations in the portions of the viaduct "completed or partially completed" as and when made, as shown by this alleged breach No. 10.

Breach No. 11:

"In many other ways hindered, delayed, embarrassed and interfered with the plaintiff in and about the said work."

This is a conclusion of the pleader. No facts are stated on which to base the conclusion. It does not appear how many other ways the defendant hindered, delayed, embarrassed, and interfered with plaintiff in and about the work or of what these other ways consisted.

These counts, 1, 2, 3, 4, and 5, when construed and considered as a whole, and these 11 breaches of the alleged duty not to hinder, delay, embarrass, or interfere with the plaintiff in the performance of the contract, when considered collectively or separately do not contain "a clear and distinct statement of the facts which constitute the cause of action, so that they may be understood by the party who is to answer them, by the jury, who are to ascertain the truth of the allegations, and by the court, who is to give judgment." B. R., L. & P. Co. v. Nicholas, 181 Ala. 500, 61 South. 364; 1 Chitty on Plead. (16 Am. Ed.) p. 256; Highland Ave. & Belt R. Co. v. Dusenberry, 94 Ala. 418, 10 South. 274; Andrews v. Flack, 88 Ala. 294, 6 South. 907.

[10] The necessary facts constituting the breach should be set forth in clear, unmistakable terms; the breach should be assigned with such clearness, certainty, and particularity as will notify the defendant in what particular he has failed to perform the covenant or stipulation in the contract; and a mere statement, conclusion, of the pleader that the covenant or stipulation has been broken is not sufficient. Lambie v. Sloss Iron Co., 118 Ala. 427, 24 South. 108; Woodward Iron Co. v. Frazier, 190 Ala. 305, 67 South. 430; Hart v. Bludworth, 49 Ala. 218; Ala. Jail Co. v. Marion Co., 145 Ala. 684, 40 South. 100; 13 C. J. p. 732, § 864, headnotes 94–96.

The facts are not set forth with sufficient clearness and certainty, in any one of the 11 breaches, so that a material issue can be taken on it by the defendant. Not one of the eleven breaches measures up to the statute and the construction of it as shown by our decisions supra. These defects in these counts were pointed out by the defendant by demurrer, and the court properly sustained the demurrers to them. In counts 1, 2, 3, 4, 5, 8, and 10, we find this averment:

"On or about the 24th day of September 1917, the plaintiff and the Southern Railway Company, a corporation, entered in a contract for the construction by the plaintiff within nine months thereafter of a certain bridge or viaduct on Twenty-First street in the city of Birmingham, state of Alabama; time being expressly made of the essence of the said agreement."

The written contract as it appears in these counts contains this agreement:

"That the said work shall be fully completed and turned over to the railway company for acceptance, as a finished job, ready for the use for which it is intended, not later than nine (9) months from the date of this agreement, unless the said time for completion shall be extended by the railway company, by notice in writing, to the contractor; provided, however, that the contractor shall not be responsible for delays in said work arising by reason of strike, riot, storm, cyclone, earthquake or act of God, or by other occurrence beyond the control of the contractor while in the exercise of due diligence and without negligence, and in the event of delay or delays arising from such cause or causes the time for completion as hereinbefore provided, shall be extended for a period which shall be equal to that occasioned by such delay or delays; it being understood that the said chief engineer of the railway company, or his duly authorized representative, shall be the sole judge of the necessity for, and the period of, such extensions of the time for completion.

"And, time being of the essence of this agreement, it is understood, and the contractor hereby agrees, that, whenever, in the opinion of the said chief engineer of the railway company, an increase of forces, supervision, material or equipment may be necessary to insure the completion of the work within the said time limit above stated, or within the limit of any extension thereof, as above provided, the railway company may through its said chief engineer, require an increase of forces, supervision, material and equipment by the contractor, or may itself employ and put upon the work such additional forces, supervision and equipment and furnish such additional material, and the cost thereof, if employed and placed upon the work by the railway company, shall be deducted from any sum or sums due, or to be due, the contractor by the railway company hereunder, before final payment is made; and if at the time of final settlement with the contractor, the railway company may not owe the contractor a sum sufficient to pay for such increase of forces, supervision, material or equipment, then and in such event, the contractor shall pay the difference to the railway company."

[11] The averments in these counts as to the time to complete the contract do not correspond with the time fixed by the contract, which is a part of each of these

counts. The two are in conflict in each count. Inconsistent, variant, and contradictory averments in the statement of the cause of action in one count subject the count to grounds of demurrer. Andrews. v. Flack, 88 Ala. 294, headnote 2, 6 South. 907; Merrill v. Sheffield Co., 169 Ala. 254, 53 South. 219.

The contract provides for additional time to complete the work when the occurrence causing the delay was beyond the control of the contractor, the plaintiff, while in the exercise of due diligence and without negligence; and, in event of delay or delays from such cause or causes, the time for completion of the work shall be extended by the defendant for a period which shall be equal to that occasioned by such delay or delays. These counts aver the occurrences causing the delays complained of in completing the work were all caused by the defendant. They fail to aver the occurrences causing the delay or delays were not permitted under the contract to be caused by the defendant. They fail to aver the time to complete the work was not extended by the defendant for a period which was equal to that occasioned by such delay or delays caused by the defendant. These variant, contradictory, and unexplained averments in each of these counts cause confusion and make the meaning obscure, and render each count uncertain as to the ground upon which a recovery is claimed; and in none of them is the defendant clearly informed of the matter or matters to be put in issue. The facts constituting the cause of action are not clearly presented in either of these counts, so a material issue in law or fact can be taken by the defendant. These insufficiencies in each of these counts are pointed out by demurrers of defendant, and in sustaining them the court did not err. Section 5321, Code 1907; Highland Ave. & Belt. R. Co. v. Dusenberry, 94 Ala. 419, 10 South. 274; B. R., L. & P. Co. v. Nicholas, 181 Ala. 500, 61 South. 361; Andrews v. Flack, 88 Ala. 294, headnote 2, 6 South. 907.

Count 6 sets out the terms of the contract claimed to have been breached by the defendant in these words:

"(d and e) By the terms of the contract, which the Director General of Railroads assumed, as aforesaid, the carriers covenanted with the plaintiff that if he would maintain a vertical clearance of at least 20 feet above the top of the rail of all railroad tracks and a lateral clearance of not less than 6 feet between the outside of his forms and the center line of tracks, the carriers would operate their trains in such a manner as to cause him no damage by striking his forms, structures, or other property."

This count avers only one breach of that covenant in the contract; it states that on March 22, 1918, the defendant's train, while being operated by his servants in line with their employment, struck the timbers and forms of plaintiff while properly in use in building the viaduct, and did serious damage to them. The written contract was attached to and made part of this count; and paragraph 23 of it reads as follows:

"The railway company will do the necessary shifting of their tracks in order to provide the proper clearance for the completed structure. The contractor will make his excavation and construct his forms in such manner as not to interfere with or endanger operation during construction. The contractor shall be required to remove any of the present paving or curbing where same interfere with the construction of the viaduct, and shall make such disposition of material removed as the engineer in charge may direct. The contractor will also be required to maintain a vertical clearance above the top rail of the railroad tracks of at least twenty (20) feet and a lateral clearance of at least six (6) feet between outside of forms and center line of tracks at all times and at no time will he be permitted to interfere with the movement of trains."

It was the duty of the contractor, the plaintiff, under the written terms of the contract. which are a part of the count, to construct his forms in such manner as to maintain a vertical clearance above the top of rail of the railroad tracks of at least 20 feet and a lateral clearance of at least 6 feet between outside forms and center line of tracks at all times, and at no time will he be permitted to interfere with the movement of trains.

It appears from the very face of the count that the alleged breach of the contract was not a part of the terms of the contract. The count does not allege what clearance was maintained by the plaintiff, whether at least 20 and 6 feet, respectively, or more or less, at the time the timbers and forms were struck by the defendant's train. It does not appear from the averments of the count that the striking by defendant's train of the forms or timbers of plaintiff was wrongful. This count (6) does not sufficiently state a cause of action against the defendant, and the demurrers to it were properly sustained.

Count 7 was withdrawn by the plaintiff, as shown by the judgment of the trial court.

Count 8 of the complaint avers the terms of the contract to have been breached by defendant in these words:

" 'The railway company shall have the right, and the same is hereby reserved by the railway company, to make such alterations in, or additions to, the work, or the plans and specifications therefor, at any time during the progress of said work, as, in the judgment of the said chief engineer of the railway company, or his duly authorized representative, may be necessary or expedient.'

"But, as a part of the said contract the carriers covenanted not to cause the plaintiff undue delay by making any such changes or additions at such a time or in such a manner that the contractor could not comply with them

and also concurrently keep the work of construction moving forward toward completion to the end that the viaduct might be finished within nine months, as by the contract provided."

The written contract is made a part of this count. It contains the following, of which the foregoing is a part:

"The railway company shall have the right, and the same is hereby reserved by the railway company, to make such alterations in, or additions to, the work, or the plans or specifications therefor, at any time during the progress of said work, as, in the judgment of the said chief engineer of the railway company, or his duly authorized representative, may be necessary or expedient; and if and when such alterations or additions or [are] ordered and made, the value or values of the same shall be decided by the said chief engineer, or his duly representative, in accordance with the schedule of prices herein contained. If such alterations or additions shall not be covered by the said schedule of prices, the same may be paid for by the railway company at the actual cost to the contractor of labor and material entering into such alterations or additions, plus ten per centum (10%) of such actual cost."

Sections 10 and 12 of the specifications, which are a part of the written contract and also of count 8, read as follows:

"10. The railway company reserves the right to make any alterations or additions at any time, and if changes are made, the value of the same shall be decided by the chief engineer of construction of the railway company."

"12. Should it be necessary for the railway company to order additional work, for which the contractor has named no unit price in his schedule, or for which the unit price is deemed improper by the chief engineer of construction, then the railway company reserves the right to pay for such additional work at actual cost plus ten per cent (10%)."

[12] Under this written contract, the defendant had the right to make such alterations in the work or the plans or the specifications therefor at any time during the progress of the said work; and the defendant had the right to make such additions to the work or the plans or specifications therefor, at any time during the progress of the said work; and section 10 of the specifications gave the defendant the right to make any alterations or additions at any time.

The words "during the progress of the said work" in the connection where used appear to mean during the progress of the said work of erecting the viaduct. The right to make alterations in the work presupposes the work to be altered had been done. It gives the right to alter the work done or to alter the plans or the specifications for the work before it is done at any time during the progress of the work in erecting the viaduct, at any time before the work of building the viaduct is completed. When the written contract is construed as a whole, it

appears clear that the defendant had the right under it to make alterations in or additions to the work or the plans or specifications therefor at any time during the progress of erecting the viaduct and before it was completed. This appears to be the intended meaning of the parties from the further facts in the written contract, which provides, the price and payment for labor, material and profit for the alterations in or additions to the work that may be required by the defendant to be made by the plaintiff in building the viaduct, which are different from the original plans and specifications. By this written contract provision was made for payment of work done in building the viaduct, and it also provided for payment for the cost of labor and material, plus 10 per cent. for alteration in or additions to the work required by the defendant to be made by plaintiff.

This count 8 also relies on and attempts to aver many breaches of the same stipulation of the contract, which render it defective, and subject to demurrer. They appear in paragraphs G and H of the count. Nave v. Berry, 22 Ala. 382, and authorities supra on this subject. In paragraph G it avers the duty was breached by making certain alterations in or additions to the work. It does not aver what these alterations or additions were, how many were required, nor when they were made. These breaches are too indefinite and uncertain; they are mere conclusions, and render the count defective. Under the written terms of the contract the defendant had the right to require the additional work, to wit, a manhole, with connecting sewer lines therefrom to each of the two catch-basins, etc., as appears in paragraph H. This alleged breach in paragraph H was an alteration in or addition to the work on the viaduct. The viaduct had not been built; this work to be altered or added was to the approaches to the viaduct; to require a manhole with connecting sewer lines therefrom to be constructed for each of the two gutters on the approach of the viaduct. This alteration or addition was permissible to be required by defendant of plaintiff under the written contract; and as and when made, under the averments of the count, it was within the time allowed by the contract. The defendant did not breach the alleged duty by requiring the plaintiff to perform this work. This count does not sufficiently state a cause of action against the defendant, and the court did not err in sustaining the demurrers to it.

The covenant or stipulation in count 9, claimed to be breached, appears to have been made orally previous to the execution of the written contract; and it varies, adds to, or contradicts the stipulations and covenants in the written contract. It avers the viaduct was to be supported during construc-

tion by temporary upright timbers placed in rows or bents about 12 or 14 feet apart along the entire length of the viaduct, resting upon the earth between the railroad tracks, and the plaintiff did not provide himself with materials suitable for the erection of temporary spans of more than twenty feet in length. The written contract in section 23, which appears in full in this opinion, required the plaintiff to keep the viaduct supported temporarily during construction by forms at least 20 feet high above the top of the rail of railroads and at least 6 feet lateral clearance between outside of forms and center line of tracks. Under the prior verbal contract the forms need not be at least 20 feet high above the top of rails, and need not be placed at least 6 feet between outside of forms and center line of tracks as the written contract, entered into afterwards, required.

[13] Thus it appears the verbal stipulation or covenant was made previous to the written contract; it was merged into it, and was not subject to the breach alleged. This oral stipulation is inadmissible to add to, contradict, or alter the written contract; the oral contract contradicting the written contract in material matters in the same count makes the count insufficient and demurrable; and the court did not err in sustaining the demurrers to it. Lakeside Land Co. v. Dromgoole, 89 Ala. 505, 7 South. 444; Andrews v. Flack, 88 Ala. 294, 6 South. 907; Roquemore v. Vulcan Iron Wks., 151 Ala. 643, 44 South. 557; Maness v. Henry, 96 Ala. 454, 11 South. 410; Thomas v. Irvine, 171 Ala. 332, 55 South. 109; Highland Ave. Belt R. Co. v. Dusenberry, 94 Ala. 419, 10 South. 274.

Count 10 is defective in a matter hereinbefore mentioned. It also alleges more than one breach of the same duty not to hinder, delay, embarrass, or interfere with plaintiff in building the viaduct, claimed to arise out of one stipulation or covenant in the contract. This violates the rule in Nave v. Berry, 22 Ala. 383. There are four breaches alleged in this count. Two read as follows:

"Did in excess of such authority wrongfully and without lawful excuse hinder, delay, embarrass and interfere with plaintiff and with the work which he was doing; * * * and in many other ways hindered, interfered with, embarrassed, and obstructed him in doing his work."

Each breach is alleged in terms too general; each alleges conclusions and no facts on which the conclusions are based. Neither states any facts clearly and distinctly, so that a material issue in law or fact can be taken thereon by the defendant. The latter breach would, if allowed, permit numerous hinderances, interferences, and embarrassments of any kind to be made and shown by plaintiff at any time, without any fact aver-

red to put defendant on notice of the intended proof. This is not permissible. Section 5321, Code 1907, and authorities supra. There are two other breaches alleged in this count. They read as follows:

"Would not permit timbers at necessary intervals for the support of plaintiff's temporary structures to be maintained between the said railroad tracks, thereby greatly limiting the use of plaintiff's steam derrick and trucks and requiring excavated material, sand, gravel, cement, timbers, steel beams and other heavy construction materials, to be removed and placed by hand; would not permit temporary supports for the new viaduct to be maintained at necessary intervals between said railroad tracks, thereby making it necessary for the plaintiff with great difficulty and delay to obtain and use in his temporary structures long, heavy steel beams, and to construct temporary spans of great length with extreme difficulty and great delay as part of the scaffolding and temporary support for the viaduct during course of construction."

These two breaches fail to aver that defendant would not permit the timbers at the places indicated in and allowed by the written contract which is a part of the count. They fail to aver that at the place where defendant prevented the timbers from being placed were at places where they would not interfere with the movement of trains, and where they would be at least 20 feet high above top of rail of railroads, and where they would not be located within at least 6 feet between outside of the forms of the timbers and center line of the tracks, as the written contract, which is a part of the count, requires. Neither of these two breaches states the facts with sufficient certainty and clearness so that a material issue can be taken thereon by the defendant in law or fact, as the statute requires. Section 5321, Code 1907, and authorities supra. This count alleges a part of the covenant was oral and a part of it was, after the work was entered upon, reduced to writing. The contract in writing appears on its face to be complete. The count fails to allege with certainty the contract in its entirety. The part alleged to have been oral, previous to the execution of the written contract, differs from the written in some material respects, yet that subject is treated in the written contract made after the oral contract by the parties. That part of the oral contract alleged to have been breached is stated in the count as follows:

"At the time of entering into the said contract, there existed across the tracks of said corporations on said street a bridge built of steel spans, being used as a viaduct. As a part of the said contract the said Southern Railway Company, for itself and the other corporations aforenamed, covenanted that the plaintiff might, without delay, hindrance, embarrassment, or interference by the said corporations, make full use of the said old bridge in constructing

the new bridge or viaduct, and to that end might place such temporary timbers between the railroad tracks underneath said old bridge as might be necessary to support the several spans and keep them in service for plaintiff's purposes after the tensile members thereof had been severed. Also, as a part of the said contract, the said corporations covenanted that temporary timbers for the support of the new viaduct during course of construction and for the support of plaintiff's temporary working structures might be placed and maintained upon the land between each of the railroad tracks aforementioned."

The written contract provides for "razing and removing of the existing structure," and to construct a re-enforced viaduct in lieu thereof "at and for the prices or sums of money hereinafter mentioned and upon the terms and conditions hereinafter expressed." In paragraph 8 of the written contract, the plaintiff agrees to pay $750 "for the material in said existing structure to be removed, as aforesaid." In section 12 of the written contract we find it contains this:

"The railway company furthermore agrees, in consideration of the work of razing and removing said existing structure, herein agreed to be performed by the contractor, and as an additional consideration for the erection and construction of the proposed new viaduct, that the contractor may retain and dispose of, as his own property, all material or materials now in and constituting said existing structure; the contractor hereby agreeing to accept said material or materials, and pay the railway company the nominal sum hereinbefore mentioned, as full consideration for the work of razing and removing said structure."

In section 10 of this written contract the plaintiff was required to give bond in the sum of $45,000, "conditioned for the faithful performance of the contractor of each and every of the covenants, obligations and undertakings of the contractor in this agreement expressed and contained." No prior oral contract, terms, conditions, stipulations, or covenants are mentioned in the condition of the bond. This written contract also, as hereinbefore shown in section 23, declared:

"The contractor will also be required to maintain a vertical clearance above the top of rail of the railroad tracks of at least twenty (20) feet and a lateral clearance of at least six (6) feet between outside of forms and center line of tracks at all times and at no time will he be permitted to interfere with the movement of trains."

The written contract purports to set out the terms and conditions upon which the old structure was to be razed and removed and the new structure erected. It is silent as to the oral covenant or oral stipulation mentioned in this count, yet that subject is treated in it. It does not appear in the written contract. When all the averments of the count and the written contract, which is a part of the count, are construed and considered as a whole, under demurrer, this prior oral covenant or oral stipulation claimed to be breached clearly appears to be an attempt to add to, alter, or contradict the terms of this written contract between the parties, which is not permissible. Lakeside Land Co. v. Dromgoole, 89 Ala. 505, 7 South. 444; Maness v. Henry, 96 Ala. 454, 11 South. 410; Thomas v. Irvine, 171 Ala. 332, 55 South. 109; Powell v. Thompson, 80 Ala. 51; Green v. Casey, 70 Ala. 417. The grounds of demurrer which raised these defects in the count were properly sustained by the trial court.

Finding no error in the record, the judgment is affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN, SAYRE, SOMERVILLE, and THOMAS, JJ., concur.

GARDNER, J., concurs in the conclusion.